FILED
JANUARY 28, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST MIDWEST BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| WAYNE W. LESTARCZYK, an individual; | ) | |
| MARY A. LESTARCZYK, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

**08 C 612**

**JUDGE KENDALL
MAGISTRATE JUDGE SCHENKIER**

## COMPLAINT TO FORECLOSE FIRST PREFERRED MORTGAGE OF VESSEL

NOW COMES Plaintiff First Midwest Bank, a duly organized and existing corporation under and by virtue of the laws of the United States of America, chartered to make loans of money secured by mortgages, and pursuant to the Ship Mortgage Act, 46 U.S.C. section 31301, et seq., by and through its attorneys, Stitt, Klein, Daday, Aretos & Giampietro alleges as follows:

### Facts

1. Jurisdiction of this court is appropriate pursuant to the Ship Mortgage Act 46 U.S.C. section 31301, et seq..

2. First Midwest is a Financial Institution duly authorized to do business in Illinois.

3. On or about May 9, 2002, the Defendants executed a written Promissory Note with First Midwest to finance the purchase of the following items: a 1993 Formula F-336 SR-1 boat, Hull Identification #TNRD235E293; and two Merc Cruiser stern drive engines serial number OD725664 and OD725580 (hereinafter referred to as the

"property"), which provides among other things for payment of the balance due in installment payments. Attached hereto and incorporated herein as Exhibit "A" is a copy of said Promissory Note. Attached hereto and incorporated herein as Exhibit "B" is a copy of the Consumer Security Agreement.

4. On or about May 8, 2002, the Defendants executed a First Preferred Mortgage of Vessel. Attached hereto and incorporated herein as Exhibit "C" is a copy of the Mortgage.

5. A Financing Statement naming Plaintiff as a Secured Party was filed with the Illinois Secretary of State in accordance with the Uniform Commercial Code.

6. The Note required Defendant to make monthly payments in the amount of $557.41 and provides that, in the event of a default in the payment of any installment required therein, First Midwest could declare the entire amount of said Note immediately due and payable.

7. First Midwest has not received payments due under the agreement for September 9, 2007, and each month thereafter, in the monthly installment amount of $557.41.

8. First Midwest has performed all terms and conditions required of it to be performed under the Note.

### Count I - Possession

9. Plaintiff files this complaint to foreclose the Mortgage of Vessel hereinafter described, and joins the following persons as Defendant(s):

    (a)    Wayne W. Lestarczyk, an individual.

    (b)    Mary A. Lestarczyk, an individual.

10. Information concerning Mortgage:

    (a) Nature of Instrument: First Preferred Mortgage of Vessel.

    (b) Date of Mortgage: May 8, 2002.

    (c) Name of Mortgagors: Wayne W. Lestarczyk and Mary A. Lestarczyk.

    (d) Name of Mortgagee: First Midwest Bank, N.A.

    (e) Place of recording: National Vessel Documentation Center.

    (f) Identification of Record: Book 02-54, Page 137.

    (g) Amount of original indebtedness: $60,100.00.

    (h) Present title holders of vessel: Wayne W. Lestarczyk and Mary A. Lestarczyk.

    (i) Names of persons, in addition to said owner (but excluding any Unrecorded Claimants) who are joined as Defendants, and whose equitable rights to redeem are therein sought to be foreclosed:

        1) Wayne W. Lestarczyk.

        2) Mary A. Lestarczyk.

    (j) Statement as to default and amount now due: The mortgagors, Wayne W. Lestarczyk and Mary A. Lestarczyk, have defaulted on the payment due for September 9, 2007 and each subsequent payment thereafter, causing the Bank to accelerate the note. The Note has been accelerated and there is due First Midwest Bank principal of $47,591.34. The arrearages are $2,398.87 as of December 18, 2007, plus late charges of $167.31, plus a returned check fee of $25.00, plus attorney's fees and costs and any other advances which the Mortgagee elects to make pursuant to the Note and Mortgage.

(k) Unpaid balance calculated as of December 18, 2007: $47,591.34. Per diem interest after that date: $9.55.

(l) Present title holder of vessel: Wayne W. Lestarczyk and Mary A. Lestarczyk.

(m) Names of persons, in addition to said owner (but excluding any Unrecorded Claimants) who are joined as Defendants:

    1) Wayne W. Lestarczyk

    2) Mary A. Lestarczyk

(n) Names of persons personally liable for deficiency, if any:

    1) Wayne W. Lestarczyk

    2) Mary A. Lestarczyk

(o) Capacity in which Plaintiff brings suit: Owner and holder of Note and Mortgage.

(p) Facts in support of request for attorney's fees and of costs and expenses, if applicable: The mortgagor has defaulted in payment of the indebtedness secured by the Mortgage and Plaintiff has been required to employ counsel and to institute this action.

(q) Facts in support of a request for appointment of a receiver, and the identity of such receiver if sought: The mortgagor has defaulted on the mortgage and note by failing to make the payments due for September 9, 2007 and each subsequent payment thereafter.

(r) Facts in support of a request that a United States Marshal take possession of the vessel, if sought: The mortgagor has defaulted on the mortgage and

note by failing to make the payments due for September 9, 2007 and each subsequent payment thereafter.

(s) Plaintiff does not offer to mortgagor to accept title to the vessel in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale.

11. Upon information and belief, the property is and will remain within the jurisdiction of this Court throughout the pendency of this action.

12. First Midwest has demanded return of the property from the Defendant, and the Defendant has failed and refused to do so. The Defendant unlawfully detains the property based on the failure to comply with the demands of First Midwest.

## REQUEST FOR RELIEF

Plaintiff requests:

(i) A judgment to foreclose said Mortgage.

(ii) A judgment in rem in admiralty against the mortgagor for the property.

(iii) An order granting possession.

(iv) An order appointing a receiver, if sought, authorized by this Court to operate the mortgaged vessel in which case the court shall retain in rem jurisdiction over the vessel.

(v) An order directing a United States Marshal, if sought, to take possession of the mortgaged vessel, even if in the possession or under the control of a person claiming a possessory common law lien.

(vi) Such other and further relief as equity may require.

### **Count II - Deficiency**

1 - 12.  First Midwest realleges and incorporates by references Paragraphs 1 through 12 of Count I as Paragraphs 1 through 12 of this Count II.

13.  Pursuant to the terms of the Note, Defendants are personally liable for any deficiency in full payment of that indebtedness.

14.  First Midwest has not received payments due under the agreement for September 9, 2007, and each month thereafter, in the monthly installment amount of $557.41.

15.  Defendants have defaulted under the terms of the Note by failing to make the monthly payments required to be made.  First Midwest has demanded payment of the default from the Defendants, and the Defendants have failed and refused to do so.

16.  Pursuant to the terms of the Note, First Midwest is entitled to any unsatisfied balance remaining on the account after resale of the property.

17.  Pursuant to the terms of the Note, Defendants are obligated to pay all late charges and other costs and expenses of collection, including attorney's fees.

18.  After applying all just credits and deductions, there is a balance due and owing on Defendants' account with Plaintiff in the sum of $47,609.68 as of December 18, 2007, and interest continues to accrue under the terms of the Note.

WHEREFORE, First Midwest Bank, prays that this Court grant the following relief against the Defendants:

1.  A judgment in personam in admiralty against the mortgagors jointly and severally for the amount of any outstanding indebtedness or any deficiency in full payment of that indebtedness remaining as calculated after resale of the property;

2. A personal judgment for deficiency against the mortgagors jointly and severally for the amount of any outstanding indebtedness or any deficiency in full payment of that indebtedness remaining as calculated after resale of the property;

3. A judgment for attorney's fees, costs and expenses;

4. For interest at the contract rate to the date of judgment;

5. For any other relief that this Court deems fair and just.

Respectfully submitted,

FIRST MIDWEST BANK,

By: _____
One of its attorneys

Stitt, Klein, Daday, Aretos & Giampietro, LLC
121 South Wilke Road, Ste. 500
Arlington Heights, IL 60005-1528
847-590-8700
Attorney No. 3127015

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, I certify I am an employee and agent of the Plaintiff, and that the allegations in this attached complaint are true and correct except those stated on information and belief, and as to those, I verily believe them to be true.

OFFICIAL SEAL
JOY M BER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/04/08

First Midwest Bank,
By:

Subscribed and sworn to before me
this 9th day of January, 2008.

Notary Public

Stitt, Klein, Daday, Aretos & Giampietro
121 S. Wilke Rd., Suite 500
Arlington Heights, IL 60005
(847)590-8700
Attorney No. 3127015

EXHIBIT A
Blumberg No. 5119

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $60,100.00 | 05-09-2002 | 05-09-2017 | 4500627501 | A680 / MC | | 410 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** WAYNE W. LESTARCZYK
MARY A. LESTARCZYK
9206 WALNUT LANE
TINLEY PARK, IL 60477

**Lender:** FIRST MIDWEST BANK
MCHENRY/MAIN
300 PARK BOULEVARD
SUITE 400
ITASCA, IL 60143

**Principal Amount: $60,100.00**    **Initial Rate: 7.500%**    **Date of Note: May 9, 2002**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to FIRST MIDWEST BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Sixty Thousand One Hundred & 00/100 Dollars ($60,100.00), together with interest on the unpaid principal balance from May 9, 2002, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, I will pay this loan in 180 payments of $557.41 each payment. My first payment is due June 9, 2002, and all subsequent payments are due on the same day of each month after that. My final payment will be due on May 9, 2017, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Weekly Average Yield on United States Treasury Securities, Adjusted to a Constant Maturity of (5) five years (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each five years. I understand that Lender may make loans based on other rates as well. The Index currently is 4.520% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 2.980 percentage points over the Index, resulting in an initial rate of 7.500% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase my payments to ensure my loan will pay off by its original final maturity date, (B) increase my payments to cover accruing interest, (C) increase the number of my payments, and (D) continue my payments at the same amount and increase my final payment.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST MIDWEST BANK, MCHENRY/MAIN, 300 PARK BOULEVARD, SUITE 400, ITASCA, IL 60143.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 6.980 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

  **Payment Default.** I fail to make any payment when due under this Note.

  **Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

  **False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

  **Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

  **Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts, including deposit accounts, with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

  **Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

  **Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

  **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

  **Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by and interpreted in accordance with federal law and the laws of the State of Illinois. This Note has been accepted by Lender in the State of Illinois.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of MCHENRY County, State of Illinois.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Note is secured by a First Preferred Mortgage of Vessel dated May 9, 2002 on 1993 FORMULA E-336 SR-1 BOAT (HULL #_____) and a Consumer Security Agreement dated May 9, 2002 between Borrower and Lender.

**ADDITIONAL TERMS.** The payment amount will be recalculated every 5 years on May 9th following any interest rate change on May 9th. The new payment amount is to be effective for the following 60 months beginning June 9th. Renewal rate will be based on the weekly average yield on the five year United States Treasury Securities plus 3.00%.

Loan No: 4500627501

# PROMISSORY NOTE
## (Continued)

Page 2

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: FIRST MIDWEST BANK, MCHENRY/MAIN, 300 PARK BOULEVARD, SUITE 400, ITASCA, IL 60143

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**ILLINOIS INSURANCE NOTICE.** Unless I provide Lender with evidence of the insurance coverage required by my agreement with Lender, Lender may purchase insurance at my expense to protect Lender's interests in the collateral. This insurance may, but need not, protect my interests. The coverage that Lender purchases may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that I have obtained insurance as required by our agreement. If Lender purchases insurance for the collateral, I will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance I may be able to obtain on my own.

**PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

X_____
WAYNE W. LESTARCZYK, Individually

_____
MARY A. LESTARCZYK, Individually

LASER PRO Lending, Ver. 5.19.20.02 Copr. Harland Financial Solutions, Inc. 1997, 2002. All Rights Reserved.

# CONSUMER SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $60,100.00 | 05-09-2002 | 05-09-2017 | 4500627501 | A6B0 / MC | | 410 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** WAYNE W. LESTARCZYK
MARY A. LESTARCZYK
9206 WALNUT LANE
TINLEY PARK, IL 60477

**Lender:** FIRST MIDWEST BANK
MCHENRY/MAIN
300 PARK BOULEVARD
SUITE 400
ITASCA, IL 60143

Blumberg No. 5119 EXHIBIT B

THIS CONSUMER SECURITY AGREEMENT dated May 9, 2002, is entered into between WAYNE W. LESTARCZYK and MARY A. LESTARCZYK (referred to below as "I") and FIRST MIDWEST BANK (referred to below as "Lender").

**GRANT OF SECURITY INTEREST.** To secure the Indebtedness described below (including all obligations under the Note and this Agreement), I grant to Lender a security interest in all of the Property described below. I understand that the following statements set forth my responsibilities, as well as Lender's rights concerning the Property. I agree as follows:

**PROPERTY DESCRIPTION.** The word "Property" as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

(2) MERC CRUISER STERN DRIVE ENGINES (SERIAL # 0D725664 AND 0D725580 )

In addition, the word "Property" also includes all the following: any and all accessions, attachments, accessories, replacements of and additions to any of the property described herein (such as tires or batteries attached to a car, a motor attached to a boat, or appliances and fixtures attached to a mobile home), whether added now or later, together with all proceeds (including insurance proceeds and refunds of insurance premiums) if any, and sums due from a third party who has damaged or destroyed the Property or from that party's insurer, whether due to judgment, settlement or other process.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Property unless and until such a notice is given.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**REPRESENTATIONS AND PROMISES WITH RESPECT TO GRANTOR.** I represent and promise to Lender that my correct legal name and address is: WAYNE W. LESTARCZYK, 9206 WALNUT LANE, TINLEY PARK, IL 60477; and MARY A. LESTARCZYK, 9206 WALNUT LANE, TINLEY PARK, IL 60477.

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY.** I represent and promise to Lender that:

**Ownership.** I am the lawful owner of the Property. The Property is free and clear of all loans, liens, security interests, mortgages, claims, and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement. I agree to defend Lender's rights in the Property against the claims and demands of all persons. I will not allow any other liens on the Property, even if they are junior to Lender's lien. I have the full authority and right to enter into this Agreement and to grant a security interest in the Property to Lender.

**No Sale.** Without Lender's prior written consent, I will not sell, lease, transfer, borrow against, or otherwise dispose of any of my rights in the Property unless and until all the Indebtedness is paid in full.

**Location of the Property.** I agree to keep the Property at my address shown above unless Lender tells me I can move it. If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving. In any event, I agree to keep Lender informed at all times of my current address.

**Maintenance and Insurance.** I will keep the Property in good condition and repair. If the Property is damaged, lost or stolen, I immediately will inform Lender. I will keep the Property fully insured against all loss or damage by fire, theft, collision, and such other hazards as Lender may require from time to time. The insurance will be on terms, including deductible provisions and endorsements, that are satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice. I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I will provide Lender with the original insurance policy, or other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid. If Lender receives a refund of any insurance premiums, I agree that the refund is Property covered by this Agreement. Lender may apply the refund to payment of any of the Indebtedness. Any insurance policy which I deliver to Lender will be held to secure payment of the Indebtedness. Until all Indebtedness is paid in full, Lender is authorized, but shall not be required, to file any proof of loss, adjust any loss, receive and receipt for any sum payable, surrender any policy, discharge and release any insurer, endorse any loss or refund check or draft, and in general do in my names, or otherwise, any and all things with respect to the insurance or any insurance proceeds.

**Licensing and Governmental Regulations.** I agree to keep the Property licensed at all times as required by all applicable state and federal laws. In addition, I agree to pay when due all license fees, taxes and assessments relating to the Property or the use of the Property. I further agree that the Property will not be used for any unlawful purpose or in violation of any statute, law, ordinance, or regulation relating to the use, operation, or control of the Property.

**Inspection.** I agree that Lender or Lender's agents shall have the right from time to time to inspect the Property wherever located.

**Financing Statements.** I authorize Lender to file a UCC-1 financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, I additionally agree to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. I irrevocably appoint Lender as my attorney-in-fact to execute financing statements and documents of title in my name and to execute all documents necessary to transfer title if there is a default. Lender may file

## CONSUMER SECURITY AGREEMENT
### (Continued)

Loan No: 4500627501      Page 2

a copy of this Agreement as a financing statement. If I change my name or address, or the name or address of any person granting a security interest under this Agreement changes, I will promptly notify the Lender of such change.

**LENDER'S EXPENDITURES.** If I fail (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on my behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by me. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.** I will be in default if any of the following happens:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** I die or become incompetent or insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts, including deposit accounts, with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. If I am in default, this is what Lender may do, in addition to any other rights Lender may have:

**Accelerate Indebtedness.** Lender may, subject to any cure and notice provisions required by law, declare all Indebtedness immediately due and payable, without notice.

**Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law. This means, among other rights, that Lender may enter upon the premises at the address shown above and take the Property peaceably and sell it. Lender may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the Property, and I consent to such entry. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me.

**Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair, sale, and as provided below, attorneys' fees and other collection expenses. I agree that, to the extent permitted by law, I will owe Lender any difference between the amount of the Indebtedness and the net proceeds Lender receives from the sale of the Property.

**Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me, and other persons as required by law, reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition, except as otherwise required by applicable law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments and Interpretation.** (1) What is written in this Agreement is my entire agreement with Lender concerning the Property. This Agreement may not be changed except by another written agreement between us. (2) If more than one person signs below, our obligations are joint and several. This means that the words "I," "me," and "my" mean each and every person or entity signing this Agreement, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. I also understand Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. (4) I agree that this Agreement is the best evidence of my agreements with Lender.

**Attorneys' Fees; Expenses.** I agree to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement or to collect the Indebtedness, and I shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. I also shall pay all court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Illinois.

**CONSUMER SECURITY AGREEMENT**
**(Continued)**

Loan No: 4500627501     Page 3

This Agreement has been accepted by Lender in the State of Illinois.

**Choice of Venue.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of MCHENRY County, State of Illinois.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, I agree to keep Lender informed at all times of my current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be my responsibility to tell the others of the notice from Lender.

**No Waiver by Lender.** I understand Lender will not give up any of Lender's rights under this Agreement unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean I will not have to comply with the other provisions of this Agreement. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**Agreement.** The word "Agreement" means this Consumer Security Agreement, as this Consumer Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Consumer Security Agreement from time to time.

**Borrower.** The word "Borrower" means WAYNE W. LESTARCZYK and MARY A. LESTARCZYK, and all other persons and entities signing the Note.

**Grantor.** The word "Grantor" means WAYNE W. LESTARCZYK and MARY A. LESTARCZYK.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which I am responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means FIRST MIDWEST BANK, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated May 9, 2002, in the principal amount of $60,100.00 from WAYNE W. LESTARCZYK and MARY A. LESTARCZYK to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of my right, title and interest in and to all the Property as described in the "Property Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

I HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS CONSUMER SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED MAY 9, 2002.

GRANTOR:

X _____   _____
WAYNE W. LESTARCZYK, Individually     MARY A. LESTARCZYK, Individually

LENDER:

FIRST MIDWEST BANK

By: _____
Authorized Signer

# FIRST PREFERRED MORTGAGE OF VESSEL

| Date of Mortgage | Amount of Mortgage | THIS SECTION FOR COAST GUARD USE ONLY |
|---|---|---|
| May 8, 2002 | $60,100.00 | 1127672 |

Made by:

Wayne W. Lestarczyk
Mary A. Lestarczyk
9206 Walnut Lane
Tinley Park, Illinois 60477    herein called "OWNER"

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED/FILED
13 MAY '02      07:55 AM

First Midwest Bank, N.A.
300 Park Blvd
Itasca, Illinois 60143
hereinafter called "MORTGAGEE"

RECORDED: BOOK 02-54 PAGE 137
DOCUMENTATION OFFICER

| Vessel(s) Name | Port of Record | Official Number or Hull ID Number |
|---|---|---|
| MUSTANG SALLY | West Virginia | TNRD2359E293 |

## WITNESSETH

WHEREAS, the Maker, Owner herein, is the sole owner of the whole of the vessel hereinbefore named and described, (If more than one vessel if mortgaged hereunder, the term "VESSEL" means each such vessel) and is justly indebted to the Mortgagee as evidenced by a Promissory Note / Loan Agreement / Retail Installment Contract / Note and Security Agreement (any of which is hereinafter called "NOTE") in the amount indicated.   Date of "NOTE" 5/9/02

AND WHEREAS, Owner has agreed to give this Mortgage as security and has authorized and directed the execution and delivery hereof;

NOW, THEREFORE, in consideration of the promises and for other good and valuable consideration, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the vessel(s) described above, together with masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document being deemed included herein by reference.

TO HAVE AND TO HOLD all and singular the above-described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his/her/their heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Owner agrees to pay said indebtedness and to perform and observe the further terms, convenants and agreements herein, and to hold the vessel subject hereto.

## ARTICLE I – PARTICULAR COVENANTS OF OWNER

Owner represents, warrants and covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under their Certificate of Documentation, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of said Note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of its incorporation and authorized to do business and in good standing in any other State where Owner regularly does business.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever, except as may herein below be specified, and shall warrant and defend title to and possession of all and every part thereof for the benefit of


EXHIBIT C

Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transactions.

Owner shall at his/her/their own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured, and in at least the amount of the unpaid balance of the Note, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear; all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

Owner shall comply with and not permit the vessel to be operated contrary to any provision of laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, nor remove the vessel from the limits of the territorial waters of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

Owner shall place and keep prominently in the pilot house (if any), chart room, Master's cabin, or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

Owner shall pay when due all taxes, assessments, governmental charge, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his/her/their own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records; and shall certify quarterly and if Mortgagee requests, monthly that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein. Owner shall not charter the vessel except to persons and for uses lawful for American vessels and then only provided the insurance required hereunder be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or change ownership or control, or dissolve.

From time to time Owner shall execute and deliver such other and further instruments and assurances as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in Paragraph (c) of Section 1(B) of Article II.

## ARTICLE II – DEFAULT

In any one or more of the following events, herein termed "Events of Default", viz:

A.    Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or breach of any warranty of Owner herein or in the Note or the due and punctual performance of any provision of Article I hereof, or attempt to violate Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein or in the Note;

2

B. Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgement against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every case, Mortgagee may:

(a) Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith;

(b) Recover judgement for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(c) Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and Mortgagee may become the purchaser.

For such purposes Mortgagee and its agent are hereby irrevocably appointed the true and lawful attorneys of owner in his/her/their name and stead to make all necessary transfers of the vessel thus sold.

2. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or take the possession thereof, and to defend any action and/or discharge any lien.

3. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgement and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment or repairs or otherwise or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate provided in the Note; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the Note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

3

All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said Note and all damages sustained by mortgagee because of default, shall be repaid by Owner on demand, with interest on all such amounts at the rate provided in the Note; and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgage shall not be obligated to make any such advances or expenditures, not shall the making thereof relieve Owner of any obligation or default with respect thereto.

## ARTICLE III – POSSESSION UNTIL DEFAULT

Intil one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use f the vessel.

## ARTICLE IV – SUNDRY PROVISIONS

ll covenants and agreements of Owner herein contained shall bind Owner, his/her/their heirs, executors, administrators and ssigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following ny assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person the Owner herein, "his/her" shall mean "their".

N WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has aused this Mortgage to be executed in its name.

_____
Wayne W. Lestarczyk

_____
Mary A. Lestarczyk

## ACKNOWLEDGEMENT

IDIVIDUAL MORTGAGOR(S)

tate of ___Illinois___ County of ___Cook___

n this ___8th___ day of ___May___, ___2002___, before me personally came and appeared _____

___Wayne W. Lestarczyk and Mary A. Lestarczyk___
me known to be the person(s) described in and who executed the foregoing Mortgage, and he/she (they) acknowledged to me at he/she (they) executed and delivered the same as his/her/their free act and deed.

TAMP OR SEAL

OFFICIAL SEAL
CAROL A BASIC
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11/01/05

_____
NOTARY PUBLIC
My commission expires: ___11-1-05___

ORPORATE MORTGAGOR

ate of _____ County of _____

n this _____ day of _____, _____, before me personally came and appeared _____

_____ to me known to be the same individual who signed the foregoing strument on behalf of _____ and acknowledged the within instrument be the free act and deed of the said corporation.

TAMP OR SEAL

_____
NOTARY PUBLIC
My commission expires: _____

DEPT. OF TRANSP. USCG-CG-1270 (REV. 09-01)  OMB APPROVED 2115-0110

# UNITED STATES OF AMERICA

DEPARTMENT OF TRANSPORTATION
UNITED STATES COAST GUARD

NATIONAL VESSEL DOCUMENTATION CENTER

## CERTIFICATE OF DOCUMENTATION

| VESSEL NAME | OFFICIAL NUMBER | IMO OR OTHER NUMBER | YEAR COMPLETED |
|---|---|---|---|
| MUSTANG SALLY | 1127672 | TNRD2359E293 | UNKNOWN |
| HAILING PORT | HULL MATERIAL | | MECHANICAL PROPULSION |
| CHICAGO, IL | FRP | | YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| 10 GRT | 8 NRT | 33.5 | 8.3 | 5.4 |

PLACE BUILT
UNKNOWN

OWNERS
WAYNE W LESTARCZYK
MARY A LESTARCZYK

OPERATIONAL ENDORSEMENTS
RECREATION

MANAGING OWNER

WAYNE W LESTARCZYK
9206 WALNUT LANE
TINLEY PARK, IL 60477

RESTRICTIONS
NO COASTWISE: BUILD EVIDENCE NOT PRESENTED
NO FISHERY: BUILD EVIDENCE NOT PRESENTED

ENTITLEMENTS
NONE

REMARKS
NONE

ISSUE DATE
MAY 16, 2002

THIS CERTIFICATE EXPIRES
MAY 31, 2003
MM

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

PREVIOUS EDITION OBSOLETE. THIS CERTIFICATE MAY NOT BE ALTERED

This certificate is not valid for operation of the vessel until the vessel is marked with the name, official number, and hailing port as shown on the certificate. The original certificate must be kept aboard the vessel at all times when in operation and must be presented upon the demand of federal, state or local officials for law enforcement purposes. Vessels with only a recreational endorsement may not engage in commercial trade.

Documented vessels may be registered by states for tax and other purposes and may be required to display a state decal. This certificate is valid for one year. Renewal is the responsibility of the owner. This certificate must be surrendered to the National Vessel Documentation Center (NVDC) upon a change in ownership, change in state of incorporation, or a change in any other element shown on the certificate other than change of address. This certificate is invalid for any vessel other than one documented solely for recreation when the vessel is placed under the command of a person who is not a citizen of the U.S. The vessel and its equipment are liable to seizure and forfeiture to the U.S. government and the owner is liable for a civil penalty of not more than $10,000.00 per violation. Each day of a continuing violation is a separate violation.

Any change in address of the managing owner must be reported promptly to the NVDC. You may contact us at (304) 271-2400.

**SALE OR TRANSFER OF VESSEL**

100% OF THE VESSEL IDENTIFIED HEREIN IS SOLD (TRANSFERRED) BY THE OWNER(S) NAMED ON THE FACE OF THIS CERTIFICATE TO THE FOLLOWING PERSON(S). ADDRESS MUST BE INCLUDED.

IF SOLD (TRANSFERRED) TO MORE THAN ONE PERSON, THE PURCHASER(S)/TRANSFEREE(S) ARE TENANTS IN COMMON, EACH OWNING AN EQUAL UNDIVIDED INTEREST, UNLESS OTHERWISE INDICATED HEREIN. CHECK ONLY ONE OF THE FOLLOWING BLOCKS TO SHOW ANOTHER FORM OF OWNERSHIP.

☐ JOINT TENANCY WITH RIGHT OF SURVIVORSHIP    ☐ TENANCY BY THE ENTIRETIES    ☐ COMMUNITY PROPERTY

☐ OTHER

SIGNATURE OF SELLER(S)/TRANSFEROR(S) OR PERSONS SIGNING ON BEHALF OF SELLER(S)/TRANSFEROR(S):

DATE SIGNED:

NAME(S) OF PERSON(S) SIGNING ABOVE, AND LEGAL CAPACITY IN WHICH SIGNED (E.G. OWNER, AGENT, TRUSTEE, EXECUTOR)

ACKNOWLEDGMENT (TO BE COMPLETED BY NOTARY PUBLIC OR OTHER OFFICIAL AUTHORIZED BY A LAW OF A STATE OR THE UNITED STATES TO TAKE OATHS.)

ON _____ THE PERSON(S) NAMED
         (DATE)

STATE:

COUNTY:

ABOVE ACKNOWLEDGED EXECUTION OF THE FOREGOING INSTRUMENT IN THEIR STATED CAPACITY(IES) FOR THE PURPOSES THEREIN CONTAINED.

NOTARY PUBLIC
MY COMMISSION EXPIRES:

**PRIVACY ACT STATEMENT**

IN ACCORDANCE WITH 5 USC 552(A), THE FOLLOWING INFORMATION IS PROVIDED TO YOU WHEN SUPPLYING PERSONAL INFORMATION TO THE U.S. COAST GUARD

1. AUTHORITY. SOLICITATION OF THIS INFORMATION IS AUTHORIZED BY 46 USC CHAPTER 313 AND 46 CFR, PART 67.

2. THE PRINCIPAL PURPOSES FOR WHICH THIS INSTRUMENT IS TO BE USED ARE:
   (A) TO PROVIDE A RECORD, AVAILABLE FOR PUBLIC INSPECTION AND COPYING, OF THE SALE OR OTHER CHANGE IN OWNERSHIP OF A VESSEL WHICH IS DOCUMENTED, WILL BE DOCUMENTED, OR HAS BEEN DOCUMENTED PURSUANT TO 46 USC, CHAPTER 121.
   (B) PLACEMENT OF THIS INSTRUMENT IN A BOOK FOR EXAMINATION BY GOVERNMENTAL AUTHORITIES AND MEMBERS OF THE GENERAL PUBLIC.

3. THE ROUTINE USE WHICH MAY BE MADE OF THIS INFORMATION INCLUDES DEVELOPMENT OF STATISTICAL DATA CONCERNING DOCUMENTED VESSELS.

4. DISCLOSURE OF THE INFORMATION REQUESTED ON THIS FORM IS VOLUNTARY. HOWEVER, FAILURE TO PROVIDE THE INFORMATION COULD PRECLUDE FILING OF A BILL OF SALE AND DOCUMENTATION OF THE VESSEL NAMED HEREIN PURSUANT TO 46 USC CHAPTER 121. MOREOVER, BILLS OF SALE WHICH ARE NOT FILED ARE NOT DEEMED TO BE VALID AGAINST ANY PERSON HAVING ACTUAL KNOWLEDGE OF THE SALE. (46 USC 31321 (A)).

AN AGENCY MAY NOT CONDUCT OR SPONSOR, AND A PERSON IS NOT REQUIRED TO RESPOND TO A COLLECTION OF INFORMATION UNLESS IT DISPLAYS A VALID OMB CONTROL NUMBER.

THE COAST GUARD ESTIMATES THAT THE AVERAGE BURDEN FOR THIS FORM IS 20 MINUTES FOR COMPLETING AND 5 MINUTES FOR FILING. YOU MAY SUBMIT ANY COMMENTS CONCERNING THE ACCURACY OF THIS BURDEN ESTIMATE OR ANY SUGGESTIONS FOR REDUCING THE BURDEN TO: COMMANDANT (G-M), U.S. COAST GUARD, 2100 2ND STREET, SW, WASHINGTON, DC 20593-0001 OR OFFICE OF MANAGEMENT AND BUDGET, PAPERWORK REDUCTION PROJECT (2115-0110), WASHINGTON, DC 20503.

AB 20485722419